By the Court.
Duer, J.
The questions first to be consi *140 dered are, whether the plaintiffs are not precluded from asserting their present claim by the judgment of the supreme court in the former suit, and whether, upon the supposition that the judgment of the supreme court has not created an estoppel, it ought not still to be regarded by us, upon the salutary principle that it is the duty of judges “ stare decisis,” as a precedent of controlling authority. These questions are preliminary in their nature, and if either of them must be determined in favor of the defendants, it will be needless to examine those which chiefly occupied the attention of the counsel upon the hearing, and, which, if this were the original suit, we should be compelled to decide.
The truth of the proposition, that the law will not suffer the same question to be twice agitated between the same parties, but holds them to be concluded when it has once been determined by a court of competent jurisdiction, and the judgment so rendered is still in force, is not denied, but it has been strenuously contended, that the doctrine is only applicable, when the cause of action, in the successive suits, is identical, and the decision in the prior has proceeded upon a question of fact, not of law. And upon both these grounds it is insisted that the present case is either an exception from the general rule, or is not within its purview. . The cause of action in the former suit, it is said, was the refusal of W. & J. Brown & Co. to apply the unexhausted balance of the credit to the payment, pro rata, of the bills for ¿65,000 ; whereas, in the present, it is the refusal to apply the same balance to the payment ratably of the subsequently drawn bills for ¿68,000 ; and as the facts in the former suit were found by a special verdict, it is further alleged, that the question for the decision of the court, and upon which its judgment was founded, was necessarily and purely a question of law.
The position, that in order to raise an estoppel by a prior-judgment, the cause of action in the second suit, must, in all respects, be the same, as in the first, we feel no difficulty or doubt in rejecting. It is not indeed absolutely novel, but it is repugnant to the reasons of public policy embodied in the maxim, “ Interest reipublim ut sit finis litium,” upon which the doctrine of the conclusiveness of a judgment is founded; and so far from *141 being sustained by authority, it is contradicted by many decisions. The decisions clearly show that the identity which the law requires, is widely different from that upon which the learned counsel for the plaintiffs insisted, and in proof of this, we shall refer to a few of the leading cases. In Kitchen v. Campbell, (1 Wilson, 308) which is more fully reported by Sir W. Blaclcstone, under the title of Fletcher v. Campbell (2 Black. 827), the action was brought by the assignee of a bankrupt against a judgment creditor, who had sold goods, alleged to be those of the bankrupt, under an execution, and the plaintiff claimed to recover the proceeds of the sale as money had and received to his use, upon the-ground that an act of bankruptcy had been committed before the sale, which, by relation, vested in him the title to the goods, as assignee. It appeared in evidence, that the plaintiff had brought an action of trover against the sheriff of London and the defendant, for the goods levied on under the execution, and that in this suit a verdict and judgment had been rendered for the defendants, and the question was, whether this judgment was a bar to the plaintiff’s recovery. Here, neither the cause of action, nor the sum sought to be recovered, was identical. The first action was founded upon a tort, the second, upon an implied assumpsit. The measure of damages in the first, had the plaintiff succeeded, would have been the actual value of the goods; in the second, he could recover no more than the sum received by the defendant; but the court, after the argument, was of opinion that these circumstances created no distinction which would prevent the application of the general rule, and that the prior judgment was an absolute bar. The ground of the decision was, that the right of the plaintiff to recover, depended in each suit upon the same question, namely, in whom the property of the goods was vested, at the time of the sale, and that it having been once determined that the goods were not those of the assignee, he was necessarily estopped from claiming the proceeds. Lord C. J. De Grey, in delivering -the judgment of the court, admitted that in order to “ preclude a plaintiff who has failed from bringing a second suit, there must be a certain identity in the cause of action,” but he remarked that whatever may be the form of the action, the cause of action is deemed to be the same, whenever the plaintiff *142 relies substantially upon the same evidence to establish his claim, and in Martin v. Kennedy (2 Bo. & Pull. 71), Lord Eldon adopts this as the proper and sole test of the identity, which the law requires.
The able and lucid opinion of Lord Ellenborough, in Outram v. Morewood, (3 East. 346,) exhausts the learning of estoppel as "applicable to the particular case. It was an action of trespass, guare clausum fregit, and the defendants, admitting the entry, justified under a title to enter the close in question, for the purpose of digging coal. The plaintiffs replied, that the same title had been set up by the defendants, in a former suit by the plaintiff, for a prior trespass, and that upon the issue taken upon the title, in that suit, a verdict had been found against the defendants, and averred that by this verdict, and the judgment thereon, “ the defendants were estopped from setting up the same defence.” To this replication the defendants demurred, evidently upon the ground, that as the causes of action were distinct, they were not concluded by the prior judgment; but the court of king’s bench, by a unanimous decision, overruled the demurrer, and gave judgment for the plaintiff. Lord Ellenborough, in his opinion, examines and analyses the cases, from the time of the year-books, and remarked that the finding upon title in trespass, not only operates as a bar to a future recovery of damages for the same trespass, but also by way of estoppel to any action, for any injury to the same supposed right of possession ; and hence, as the plaintiff would have been eoncludedj had the issue upon the title been found against him, it was a necessary consequence, that the defendants were concluded by the verdict and judgment in his favor. He further observed, that there is an important distinction between those cases, in which a judgment operates as a bar to a future suit for the same thing, and those in which it operates as an estoppel; in the first class, the judgment itself raises the bar, in the second, it is the matter alleged by the party, and upon which the judgment proceeded, that creates the estoppel.
The cases in our own courts, and particularly Gardiner v. Buchbee (3 Cow. 120), Burt v. Sternbugh (4 Cow. 559), and Bouchaud v. Diaz (3 Denio 238), entirely correspond with those that have been quoted. Gardiner v. Buchbee came before- the *143 supreme court, upon a writ of error to the common pleas of this city. The action was on a promissory note, and the defence was, that the note had been given in part payment for a vessel sold by the plaintiff to the defendant and others, and that in consequence of the fraud of the plaintiff in the sale, there was an entire failure of the consideration. Upon the trial, the defendant, to establish his defence, offered to prove that the plaintiff had impleaded the defendant in the marine court of this city, .upon another promissory note, for the same amount as that in suit, and for the same consideration ; and that upon the trial of that case the fraud of the plaintiff was the only question at issue, and that the court, upon the ground that the sale was fraudulent, had given judgment for the defendant. The evidence was admitted, and by the record of the judgment in the marine court, and extrinsic proof, the facts offered to be proved were established, but the judge charged the jury that the facts so proved, although entitled to their consideration as evidence, were not a bar to the plaintiff’s demand, and to this direction the defendant excepted. The jury found a verdict for the plaintiff, upon which the court of common pleas, overruling the exception taken on the trial, rendered judgment in his favor. The supreme court, however, was of opinion that the exception was well taken, and that the judge ought to have charged the jury that if they were satisfied, from the extrinsic proof, that the question of fraud had been passed upon in the marine court, the record was conclusive against the plaintiff’s right to recover. The judgment of the common pleas was therefore reversed. In delivering th.e opinion of the court, Hr. J. Woodworth stated that “ the> 1'aw is well settled that the judgment of a court, having jurisdiction directly upon the point, is as a plea in bar, or as evidence, conclusive between the parties upon the same matter, when directly in question in another suit.” And it was upon this principle, thus broadly stated, that the actual decision was founded. Burt v. Sternbugh was decided in a great measure upon the authority of Outram v. Morewood, and, in principle, is not distinguishable. The action was trespass quare clausum fregit, and upon the trial the defendant offered to prove that the premises in question were not within the patent under which the plaintiff derived his title ; consequently, *144 that he had no right to maintain the suit. To the admission of this evidence the plaintiff objected, on the ground that in a former suit brought by him, for a different trespass upon the same premises, the same question had been raised by the defendant, and had been determined against him ; and the judge, being of opinion that by the judgment in the former suit, the defendant was estopped from opening again the question thus determined, excluded the evidence. The supreme court affirmed his decision, and refused a new trial. Bouchaud, Executor, &c., v. Diaz, is the most recent case, and bears the closest analogy to the present. The plaintiff’s testator and the defendant were co-sureties for one Castro upon two custom-house bonds, and the plaintiff, as executor, having satisfied one of the bonds, brought this action to recover from the defendant, as a co-surety, one half of the sum he had paid. The defence was, that with the consent of the plaintiff the defendant had been released from his obligation as surety by the secretary of the treasury, and in support of his defence, the defendant gave in evidence a judgment record, from which it appeared that the plaintiff sued the defendant for contribution in this court, the other bond being set forth in the declaration in that suit as a part of the ground of action, that the defendant had pleaded the release and consent of the plaintiff in bar, that to this plea the plaintiff had demurred, and that upon the issue joined upon the demurrer the court had rendered judgment for the defendant. The plaintiff objected to the introduction of this evidence upon the ground that the bonds were not the same in both suits, in other words, that the cause of action was not the same in each; but the circuit judge overruled the objection, and held that the prior judgment was, under the circumstances, a bar to the action, and upon a motion for a new trial the supreme court affirmed-his decision. Chief Justice Bronson, in giving the decision of the court, expressed himself with his usual brevity, clearness, and force. He remarked that as different bonds were mentioned in the declarations in the two suits, it was true that there was some difference between the cases as to the proof necessary to be given by the plaintiff to sustain the action, but that, so far as related to the principal question in controversy, namely, the right of the plaintiff to demand and the duty of the defendant to make contribution, the *145 cases were precisely alike, and hence, that the prior judgment was a conclusive bar to any new litigation of the same matter.
It must be remarked that as the judgment which was held to be a bar, was given upon a demurrer, the whole controversy in the first suit, the facts being thus admitted, must have turned upon questions of law, namely, the construction and legal effect of the release and consent set forth in the plea. And it appears from the report, that the sheriff's counsel had contended that these circumstances created a distinction which destroyed the effect of the judgment as a bar.
But the chief justice replied, that it could make no difference in principle, whether the facts upon which the court proceeded were proved by witnesses, or admitted by the parties; the judgment was in both eases equally conclusive.
It is needless to refer to any other cases, and the necessary inference from the review that has been made, may be stated in few words. It is, that as between the parties and privies a judgment is conclusive, as to every question upon which the right of the plaintiff to recover, or the validity of a defence in another suit, is found to depend, and upon the determination of which it appears from the record, or is shown by extrinsic proof, that the judgment was, in reality, founded. The judgment, if erroneous, may be reversed, but so long as it remains in force, the parties are estopped from denying either the facts, or the law, upon which it proceeded.
The application of the doctrine thus established to the present case, is obvious and decisive.- The plaintiffs sought to recover in the former suit, upon the allegation that the letters of credit, delivered by the defendants to Demarest, combined with the fact, that the bills drawn by him were purchased by the plaintiffs upon the faith of the letters, were evidence of a valid agreement upon the part of the defendants, that the bills so drawn and presented should be accepted and paid by W. & J. Brown & Co., the drawees, and that the refusal of the drawees to accept and pay the bills, rendered the defendants immediately liable to the plaintiffs to the extent of the balance of the credit, then unexhausted. It was, not the breach but the existence of this agreement, that was the principal question in controversy, and it was upon the determination of this question in *146 favor of the defendants, that the judgment of the supreme court was certainly founded. The case would have been widely different, had all the bills mentioned in the declaration in the former suit been drawn at 90 days’ sight, and the judgment of the court had proceeded upon the ground that such bills were not within the terms of the agreement; but the bill for £1000 was at 60 days’ sight, and was clearly embraced by the agreement, had such an agreement been proved ; and hence in the supreme court, the question whether there was any such privity of contract between the parties as rendered the defendants liable, was that upon which the right of the plaintiffs to recover depended, and upon which alone, the opinion of the court shows, that its judgment proceeded. The present action is founded upon the same alleged contract, and the same facts are relied upon to prove its existence, and to enable the plaintiffs to recover, we arc required to decide in their favor, the very question which the supreme court has determined against them. To such a request, without a manifest violation of the principles that have been settled by former' decisions, we cannot accede, but must hold that the judgment of the supreme court, in & suit between the same parties, in which the same question was directly at issue, is a conclusive bar to the present action. That there was no such contract, as is alleged, is emphatically “ res judicata.'
It has, however, been contended that in the present case additional facts have been proved, which vary it materially from the special verdict, upon which the judgment of the supreme court was founded ; and, that, had the same evidence been given in the former suit, it is an open question, whether a different judgment would not have been rendered ; and it is insisted, that by this variance between the cases, the effect of the prior judgment, as an estoppel, is wholly destroyed. This argument has, however, failed to convince us ; we are forced to dissent, both from its premises and its conclusion. In our judgment no additional facts have been proved, which are at all material, as bearing upon the vital question of the privity of contract, and certainly none, which, had they been given in evidence in the former suit, could have led to a different result. It is impossible to read the opinion of Chief Justice Bronson, without being satisfied that had all the facts which appear in this ease been embraced *147 in the special verdict, the judgment upon the verdict would have been exactly the same that was actually rendered. But were it otherwise, were it admitted that the cumulative evidence that has now been given would have enabled the plaintiffs to recover in the former suit, it is certain that the effect of the actual judgment as a bar to the present action would not be altered. All the additional facts that have been given in evidence in this suit existed, and for aught that appears, were known to the plaintiffs when the former action was brought to trial; and if they were, in. truth, as material as is now asserted, they ought then to have been proved. The party against whom a judgment has been rendered cannot get rid of its effect as an estoppel by the allegation of his own neglect, since, in the language of Chancellor Kent, it is a sound and salutary principle that every person is bound to take care of his own rights and vindicate them in due season (Le Guen v. Gouveneur & Kemble, 1 John. Cas. 502). Hence it has long been settled, that if a defendant, having the means of defence in his power, neglects to use them, and suffers a. recovery to- be had against him in a competent tribunal, he is for ever precluded (2 Burr. 1109; 7 Tenn. R. 269; 2 H. Black. 414), and the law would be inconsistent and unjust if the same rule was not just as applicable to a plaintiff, who has suffered a judgment to pass against him from his omission to produce the evidence that would have enabled! him to recover. We agree with Chancellor Walworth, that the; law is not chargeable with this inconsistency, but that when the same question is at issue between the parties in two successive actions, a judgment rendered for the defendant in the first, is an absolute bar to a recovery by the plaintiff in the second,, although the evidence in the second, had it been given in the first, would have entitled him to recover. (Miller v. Marnice, 6 Hill 122.)
It remains next to consider whether although the judgment of the supreme court involves a determination of the question, upon which the right of the plaintiffs to maintain this action depends, it is yet necessary to hold that it cannot operate as an> estoppel, because the question, as arising upon a special verdict, was necessarily decided by the court, as an unmixed question of law. If we understand correctly the proposition for which *148 the learned counsel for the' plaintiffs contended, it is that an estoppel, created by a judgment, is limited in all cases to the facts upon which the judgment was founded, and consequently, that when it clearly appears that the facts are not contested, but the controversy relates exclusively to questions of law, a ¡prior judgment is no bar to a subsequent action. We were not referred upon the hearing to any decisions whatever in support of this proposition, nor upon a diligent search have we found any in the books, nor indeed any trace of the distinction which it supposes to exist. We were told, it is true, that the distinction was not -only recognised but adopted by Vice Chancellor Sandford, in Carter v. Bloodgood’s Executors (3 Sand. Ch. R. 295), but we cannot think that the observations of the vice chancellor in that case, have any application to the present. It is true, that the question upon which the right of the complainant to a decree depended, was involved and had been determined in the prior suit, but not only were the parties in the two suits not exactly the same, but the second, which is decisive, related to different property. Here not only are the question and the parties the same as in the former suit, but this action is founded upon the same supposed contract, and the plaintiffs seek to recover, upon the same title, the same sum of money. And so far as respects the right of the plaintiffs to demand its payment, and the duty of the defendants to make it (we use the very words of Oh. J. Bronson, in Bouchaud v. Diaz,) the two cases are precisely alike. It cannot, therefore, be justly said that the vice chancellor, in Carter v. Bloodgood’s Executors, &c., adopted the distinction upon which the plaintiffs now rely. He founded his observations distinctly upon the fact, that the suit before him related to different property, and even -upon the question whether the prior decree, notwithstanding this difference, operated as an estoppel, expressed himself with hesitation and doubt. He deemed it needless to discuss the. question, and evidently did not mean to commit himself by a positive opinion.
It seems to us that the novelty of the proposition that we have been urged to adept, and its entire destitution of authority, are aloné conclusive reasons for its rejection. If the important distinction which the proposition asserts in reality *149 existed, we are convinced that it would not only have been mentioned by text writers and recognised by judges, but, from the frequent recurrence of cases to which it is applicable, would have been established by repeated decisions. If it be true, that an estoppel created by a judgment," is limited to facts admitted or proved, it follows that no judgment founded upon a demurrer or special verdict, can be an absolute bar. It will not preclude the part)r against whom it is rendered from claiming the same right, or setting up the same defence in a subsequent suit. He will have the right to say, I admit the facts upon which my adversary then relied, and now relies, but the law arising upon these facts is in my favor, and the judgment, which declared it to be otherwise, is erroneous. It may deserve some consideration as an authority, but has no force as an estoppel. We cannot believe that, such is or ever has been the law.
Judgments turning exclusively upon questions of law form a very large proportion of all that are rendered in contested suits, and if these are to constitute an exception to the general rule, the common law doctrine of estoppel will be robbed of its principal value, and a wide inlet be opened to all those mischiefs of interminable and oppressive litigation, which it was designed to prevent. It is needless, however, to dwell upon the unreasonableness of such an exception. It is sufficient to say, that liad it been sanctioned by the law, there would have been conclusive evidence of the fact, and none such has been adduced. On the other hand, the general rule, which has prevailed without question from the earliest period of the law, is laid down by Lord Coke in the most comprehensive terms, and Bouchaud v. Diaz may be justly referred to as an express decision. According to Lord Coke, it was resolved by the “ Judges of the King's Bench, in Ferrar’s case (8 Rep. I), that when one is barred in any suit or action, by judgment on demurrer, confession, verdict, &c„ he is barred as to that or the like action, of the like nature, for the same thing for ever.” The terms of the rule plainly embrace the ease before us, as a second action of the like nature, with the first, and for the same thing, and they show that it is the judgment itself, whatever may be its form, and without any regard to the nature of the question in controversy, that creates; the estoppel. Lord Coke does indeed proceed to state, that in *150 real actions there are several apparent exceptions to the general rule, but he adds that in personal, the bar which a final judgment creates is perpetual, and as Lord Chief Justice De Grey interprets his language (2 Black. 8B0) universal. Cases in which the first judgment was given only for faults in pleadings or other matters of form, not at all affecting the merits, are, however, excepted, as Chief Justice De Grey, in Kitchens v. Campbell, distinctly admits. But we understand the same learned judge to say, that when the first judgment was rendered on a special verdict, and the same facts are necessarily given in evidence in the second action, it is a ease to which the general rule emphatically applies. The estoppel is then certain and perpetual.
We have already seen that the judgment which the supreme court, in Bouchaud v. Diaz, held to be an estoppel, was given on a demurrer, and it is worthy of remark that it was the estoppel alone which, in that case, prevented the plaintiff’s recovery. Upon the evidence, independent of the record, the opinion of the court was evidently in his favor. It was not denied, upon the hearing, by the learned counsel for the plaintiffs, that a judgment upon a general demurrer works an estoppel as to the law, as well as to the facts of the case, but if there is any distinc tion, in this respect, between a judgment upon a demurrer and upon a special verdict, it is a distinction which we have failed to seize, and are unable to state. Whether the facts are admit ted by the parties or found by the jury, the question which is» raised for the decision of the court, and upon which its judgment proceeds, is equally and exclusively a question of law.
It must be admitted that several and distinct questions of law, questions affecting as well the validity of a defence as the right of the plaintiff to recover, may arise upon a special verdict, and in such cases it cannot be ascertained from the record alone upon what grounds the judgment proceeded. In other words, what were the precise questions that the court meant to determine. But when the plaintiff demurs to a special plea, and judgment 5s given for the defendant, there is the same difficulty, since it <eannot then be known from the record alone, whether the judgment was founded upon the sufficiency of the plea, or the insufficiency of the declaration. The reply to the objection is the *151 same in both cases. In this state the law was settled by the decision of the Court of Error, in Wood v. Jackson (8 Wend. 1-49,18 Wend. 107), that when the record fails to disclose the grounds of the judgment, parol evidence, to show what were the questions raised upon the trial and passed upon by the jury, may be admitted, and the effect of the judgment, as an estoppel, be thus established. In our opinion, extrinsic proof may, with the same propriety, be admitted to explain the judgment of the court, as the verdict of the jury, and the reasons given by the court upon the delivery of the judgment, furnish the necessary evidence.
For the reasons that have now been given we must adhere to the opinion that a prior judgment binds the parties as an estoppel upon every question which it in fact determined, and precludes them from denying, in any subsequent action, either the facts, or the law, upon which it proceeded. As the principal question upon which the right of the plaintiffs to recover depends, was in the former suit determined against them, we hold it to be a necessary consequence that the judgment, thus rendered, estops them from maintaining the present action.
Had our researches and reflections led us to a different result, we should still be constrained to say, that according to our views of the course we are bound to follow, the judgment of the supreme court ought to control our own. If as res judicata it has not ousted our jurisdiction, yet, as a precedent, it must control our action. As it was affirmed in the court of errors only by an equally divided vote, it may not have settled the law, so far as the court of appeals is concerned ; but we cannot agree that this decision in the court of errors has lessened in any degree the weight of the authority that properly belongs to it, as an unanimous decision of the supreme court, in the exercise of its own appellate powers. Indeed, the counsel, who last addressed us on the part of the plaintiffs, was so sensible of this, that he frankly stated that, unless he could demonstrate to our entire satisfaction that the judgment of the supreme court was erroneous and unjust, he could not reasonably expect from us an opposite decision. The arguments of the learned counsel and his associate were forcible in themselves, and were urged with their usual ability, but they have failed to produce in *152 our minds that clear and full conviction that could alone justify us in rejecting and setting aside the opinion of the supreme court, in the former suit, by holding that -in this the plaintiffs are entitled to recover. Regarding the question as exceedingly doubtful, w6 cannot say that the defendants are liable for the breach of a contract, which the supreme court upon mature deliberation, and substantially upon the same evidence, has declared never to have existed.
Under a system of jurisprudence which clothes those by whom the law is to be declared, with so large a. discretion as our own, it is only by their scrupulous adherence to the decisions of their predecessors that even a resemblance of stability and certainty, in the administration of justice, can be attained or preserved, and hence, it is only where the error in prior decisions is manifest and grave, the violation of principle plain and undeniable, that the obligation of judges “ stare decisis” ceases to exist. It cannot be said that - the case before us falls within this category. Certainly, the judgment of the supreme court is not liable to the imputation of manifest error. The question which it decided in favor of the defendants is considered by ns as, in no ordinary degree, difficult and doubtful, and the whole history of this litigation proves it to be so ; and we, therefore, think that we should depart, and widely depart, from the line- of our duty, should- we refuse to yield to the authority by which it has been determined.
We must therefore hold, conforming our decision to that of the supreme court, that it is not a conclusion of law from the facts in evidence, that the defendants undertook, and promised, that the bills drawn and negotiated by Demarest, at Rio, should be accepted and paid by the house in Liverpool, and consequently that they are not liable for any portion of the damages, which the plaintiffs allege they have sustained, and now seek to recover.
It is proper to add a few words upon another part of the case, in order to re-pel an inference that might otherwise be drawn from our silence. Even upon the supposition that there was a valid agreement, such as is declared upon, on the part of the defendants, that the bills drawn by Demarest should be accepted and paid ; we are not to be understood as saying that *153 the plaintiff would be entitled to recover in the present suit. The question would still remain, whether, when the bills mentioned in the declaration, were presented for payment, there was an unexhausted balance of the credit of ¿615,000, which ought then to have been applied to their satisfaction. The sum of ¿67200 part of the credit was at that time not covered by any previously accepted bills, but if this balance was applicable to the payment of the outstanding bills for ¿65000, and by the acts, and with the consent of the parties, the plaintiffs, Demarest, and W. & J. Brown & Co., was so to be appropriated, the subsequently drawn bills for ¿68000 were rightfully protested, and the refusal to pay them has created no liability, on the part of the defendants. If W. & J. Brown & Co. had rendered themselves directly liable to the extent of the balance of the credit to the holders of the bills’for ¿65000, it seems to be a necessary consequence that the defendants cannot be liable to the plaintiffs in the present action. Upon these questions which fairly arise upon the evidence, we decline to express any opinion, since as we reject the hypothesis of a privity of contract, between the parties to this suit, we are not bound to consider them, but as they may possibly become a subject of discussion in the Court of Appeals, it seemed necessary to explain the grounds of our own reserve.
If the parties elect to turn the case into a special verdict, judgment thereon must be entered for the defendants, with costs : otherwise, there must be a new trial, with costs to abide the event.