Sanford, J.
The Board of Supervisors of the county of New York acted without authority of law in hiring the premises mentioned in the complaint, and in accepting from the plaintiff the lease upon which this action is brought. By section 130 of the Military Code (Laws of 1870, ch. 80), they were authorized, in certain cases, and upon certain contingencies, to erect or rent armories and drill rooms ; but this could only be done under the particular circumstances prescribed by the act, and in accordance with its provisions. A demand from the proper military authorities, duly made and countersigned, together with a certificate from the Adjutant-General of the state, was a condition precedent to any action whatever on their part in this direction. No such demand for an armory to be used by the Eighth Regiment of the National Guard of the state of New York, or by any of the companies composing such regiment, was ever made by any one. In short, the indispensable conditions, upon which depended the power and authority of the Supervisors to enter into the lease, were never complied with, and, in the absence of any compliance with these indispensable conditions, no valid lease could be made. The rent reserved by the plaintiff’s lease never became a county charge, and any covenant on the part of the Supervisors to pay such rent was null and void, on the principle of ultra vires. It is suggested, on behalf of the plaintiff, that the provision of the statute with respect to a demand and certificate *530 is applicable only to the case of armories provided for the use of separate companies, and that, by the terms of the act, the procurement of regimental armories, to be used by several companies, is made discretionary with the Supervisors and the Inspector General; but such discretion is accorded and can be exercised only as an alternative to the erection or hiring of a company, troop, or battery armory, in compliance with a demand therefor, duly made by a captain, or commandant of a troop, battery, or company, countersigned by the commandant of a regiment, battalion, brigade, or division. The conditions of the statute must be complied with, and it must be made to appear, in the manner thereby prescribed, that the exigency has arisen with respect to at least one company, troop, or battery, before the Supervisors and the Inspector General are at liberty to consider the expediency of procuring suitable accommodations for several. When it has been made to appear, in the manner pointed out by the act, that the conditions exist, upon which an armory for the use of a single troop, battery, or company may be erected or rented, then, and not till then, may the supervisors either erect or rent such armory, or provide a regimental or battalion armory, to be used by several troops, batteries, or companies, as the Inspector General and the Board of Supervisors of the county shall deem expedient. This language readily admits of a construction which would make the approval of the Inspector General essential to the adoption of either alternative ; but it would be absurd to suppose that the legislature intended to prohibit the Supervisors from procuring the armory accommodations required by a single company, troop, or battery, unless and until the necessity therefor should be made to appear by a demand from the proper company and regimental authorities, corroborated by a certificate from the Adjutant General of the state, and, by the very *531 same enactment, authorize and empower them, in their discretion, with the assent of the Inspector General, but without any demand therefor whatever, and without any certificate from any one, to incur the expense of procuring the much more expensive, and perhaps less needed, accommodations of like character that, would suffice for several companies, or even a whole regiment or battalion. Neither the county nor the corporation of the city was bound by the lease, nor can the appropriation of the premises to the use of the Eighth Regiment, by a resolution of the Board of Supervisors, for the use and occupation thereof by the Eighth Regiment, pursuant to such resolution, be deemed a ratification of the lease such as will render it obligatory upon the defendants (Fallon v. The Mayor, 4 Hun, 583 ; Ford v. The Mayor, Ibid. 587).*
The defendants were therefore entitled to a verdict upon the admitted facts of the case, unless, by the judgment of the justice of the district court, they were estopped from denying their indebtedness to the '■ plaintiff for the rent claimed by him in such proceedings, and in this action, to be in arrear, and from asserting the invalidity of the said lease.
Does the judgment in such summary proceedings operate as such estoppel 1
There are many cases in which estoppels are sanctioned and sustained on equitable grounds. But the estoppel created by a former adjudication is not generally of this character, though it maybe, when its interposition is necessary for the protection of the officers of the tribunal before which it was rendered, or for that of innocent third persons who have taken action to their detriment on the faith of it. In general it is merely a “technical estoppel,5’ without other sanction or support than that of public policy. The *532 maxim “ interest reipublicce,ut sit finis litium'1'’ discloses its origin and the ground on which it rests. It discourages litigation, to the advantage of the community, but like all other technical estoppels, it sometimes shuts out the truth, to the detriment of the individual. It is.for this reason that technical estoppels are deemed ' “odious,” and are not favored in law.
In the present case no particular equity in favor of the plaintiff excludes the defense upon which the defendants rely, and it remains to be seen whether this summary judgment will have the effect of a technical estoppel.
To operate as an estoppel, a former adjudication must have been rendered by a tribunal having a complete jurisdiction over both the parties and the subject-matter involved. Unless these conditions exist the judgment is not conclusive, either in evidence or as a plea. With respect to courts having general jurisdiction, the intendment of law is always in favor of the validity of their judgments. In regard to tribunals of limited and special jurisdiction there is -no such intendment. Every fact necessary to uphold the jurisdiction of inferior courts must either appear by the record or be affirmatively shown by evidence aliunde. But whatever be the extent of the powers of the court, whether general or limited, if it proceed without jurisdiction, its judgment will be a nullity;' and the record thereof is never conclusive as to the recital or statement of a jurisdictional fact, unless it be to the extent of protecting its- officers or other innocent persons who have taken action to their detriment on the faith of it.
These general observations express the settled and established doctrine on this subject. Any apparent conflict with, or exceptiona.1 departure from it, is traceable to the difficulties encountered in its application' to particular cases. The authorities on the subject were compiled and examined by this court with great ful *533 ness and particularity in Bolton v. Jacks (6 Robt. 166); and although the soundness of the judgment rendered in that case, which was to the effect that in admitting to probate the will of a testator not at the time of his death an inhabitant of New York, the surrogate of this county exceeded his jurisdiction, and that his proceedings were void, and could be attacked collaterally, has been recently questioned in the prevailing opinion of the court of appeals, in the unreported case of Boderigas, administratrix, &c. v. East Biver Savings Institution, to which more particular reference will be made hereafter. I am not aware that the general doctrine there laid down by this court has been repudiated or impugned. The doctrine was stated in that case in the following terms : “ Want of jurisdiction will render void the judgment of any court, whether it be of superior or inferior, of general, limited, or local jurisdiction, or of record or not; and the bare recital of jurisdictional facts in the record of a judgment of any court, whether superior or inferior, of general or limited jurisdiction, is not conclusive, but only prima facie evidence of the facts recited; and the party against whom a judgment is offered is not, by the bare fact of such recitals, estopped from showing by affirmative facts that they were untrue.” Judge Allen’s opinion, in Dobson v. Pierce (12 N. Y., 164), and Judge Mullin’s, in Potter v. Merchants’ Bank (28 N. Y. 654), were cited, among many others, as directly in point.
Applying this general doctrine to the record of the judgment now relied upon as a conclusive estoppel, we find, in the first place, that it was rendered by an officer of local and limited jurisdiction, in special statutory proceedings of a summary character ; secondly, that, by virtue of the statute, the jurisdiction of such officer depends upon the existence as between the parties, of the particular relation of landlord and *534 tenant, under an agreement whereby the premises in question are held (2 R. S. 513, § 281; Benjamin v. Benjamin, 1 Seld. 383, 387). I am of opinion that the existence of the relation of landlord and tenant between the parties under an agreement is a jurisdictional fact, the absence or non-existence of which renders a judgment in summary proceedings on the recovery of demised premises null and void ; and that it was therefore competent for the defendants to show, as they have shown by the admission of the plaintiff, that no such relation existed, inasmuch as the lease recited in the record as establishing that relation was executed by the supervisors without legal authority. The recitals as to such a lease contained in the record made the judgment prima facie evidence of its existence and validity, but that evidence was effectually rebutted, as it well might be, by the plaintiff’s admission, and the judgment was thus shown to be null and void for want of jurisdiction of the subject matter. Had the lease been valid the relation of landlord and tenant would have existed, the jurisdiction of the justice would have attached, and the judgment, in so far as it held that the tenant remained in possession after default in the payment of rent, pursuant thereto, without the permission of the landlord, would have been conclusive in this suit of the defendants’ liability to pay such rent, unless the jurisdiction of the justice was assailable on other grounds.
I should have no hestitation in directing judgment for defendants upon the verdict in this case, upon this ground alone, were it not for the recent decision of the court of appeals, in the case of Roderigas v. East River Savings Institution, above referred to. But for that decision, the case of Bolton v. Jacks would not only warrant such a direction, but, as a controlling authority, would imperatively require it. In Birck head v. Brown (5 Sandf. 134) it was remarked that, *535 “under a system of jurisprudence which clothes those by whom the law is to be declared with so large a discretion as our own, it is only.by their scrupulous adherence to the decisions of their predecessors that even a resemblance of stability and certainty in the administration of justice can be attained or preserved, and hence it is only where the error in prior decisions is manifest and grave, the violation of principle plain and undeniable, that the obligation of judges '•stare decisis ’ ceases.” In examining the prevailing opinion adopted by the court of appeals in the case referred to, the conclusions of which were sustained by a bare majority of one, three of the learned judges of the court, including the chief justice, dissenting therefrom, I find nothing that calls in question the principles upon which the case of Bolton -o. Jacks was decided. It is true that the soundness of the decision in that case was questioned, in so far as it proceeded upon the assumption that the habitation of a testator, at the time of his death, was a jurisdictional fact, which, if erroneously decided by the surrogate in admitting a will to probate, might be collaterally attacked. But the learned judge who questions the correctness of that decision admits that the case before him, which is closely analogous, is not free from doubt, and that its decision either way would be confronted with some authority, and meet with some logical difficulties; and he is careful to declare that his own conclusions aie “based upon the construction of the statutes of this state regulating the jurisdiction and proceedings of surrogate’s courts.” Moreover, he asserts the same general principles which were laid down and relied on in Bolton v. Jacks, and which I have but reiterated above. Thus he remarks that “no court, no matter how general its jurisdiction may be, which proceeds without jurisdiction in the particular case, can make a valid record or confer any rights. When a statute *536 prescribes that some fact must exist before jurisdiction can attach in any court, such fací must exist before there can be jurisdiction, and the court can not acquire jurisdiction by erroneously deciding that the fact exists and that it has jurisdiction.” “But where general jurisdiction is given to any court over any subject, and that jurisdiction depends in the particular case upon facts which must be brought before the court for its determination upon evidence, and where it is required to act upon such evidence, its decision upon the question of its jurisdiction is conclusive until reversed, revoked, or vacated, so far as to protect its officers and all other innocent persons who act upon the faith of iV I find nothing in this language inconsistent with the general doctrine of Bolton v. Jacks, or which must needs be construed as prohibiting its application to the case now under consideration. Nor does it seem to me that the conclusion at which I have arrived in this case is in conflict with that which was reached 'by the court of appeals in Roderigas v. East River Savings Institution. I may add that in the recent case of Evans, Ex’r, v. Post (5 Hun, 338), the supreme court in the fourth department, held that in an action for the recovery of the rent of premises from which the defendant had been removed by summary proceedings to recover possession, instituted by the plaintiff pursuant to a notice terminating the tenancy, the record of such proceedings was held to be “evidence only of the fact that the right of the defendant to continue in possession had ceased, and that the plaintiff was entitled to. possession, and was not legal evidence of the lease.” I therefore hold that the record is not a conclusive estoppel; that the plaintiff’s exceptions should be overruled, and that the defendants should have judgment on the verdict.
But the record in question discloses on its face *537 another ground, on which, in my opinion, the validity of the judgment may be successfully assailed. The statute provides (2 R. S. 515, § 41) that the hearing in summary proceedings for the recovery of demised premises may be adjourned, upon the request of either party, for the purpose of enabling such party to procure his witnesses, whenever it shall appear to be necessary. It does not appear by the record that such an adjournment ever was, or appeared to be, necessary for the purpose specified, or for any purpose, nor does it appear that either party ever requested any adjournment. There is no recital to that effect, and yet it does appear that on the return day of the summons the hearing was adjourned, and that, subsequently, several successive adjournments were had. In purely statutory proceedings before tribunals of special and limited jurisdiction the provisions of the statute must be strictly complied with, and strict compliance therewith must be affirmatively shown, either by the record or otherwise. ISTo intendment in favor either of the acquirement or retention of jurisdiction is warranted. By expressly authorizing adjournments for a specified purpose, and on a specified condition, the statute impliedly prohibits all adjournments except such as are expressly authorized.
By an unauthorized adjournment the magistrate or officer before whom the proceeding is pending exceeds his jurisdiction, and his future proceedings are void. It has been repeatedly held that unauthorized adjournments preclude the further exercise of jurisdiction in ordinary suits at law in justices’ courts, and that such suits are thereby discontinued (Proudfit v. Humman, 8 J. R. 391 ; Hogan v. Baker, 2 E. D. Smith, 22; Wight v. McClave, 3 Id. 316).
Here the adjournments in question were not only unauthorized but expressly prohibited. The statute *538 expressly declares (section 41) that an adjournment shall in no case exceed ten days. The record shows that the very first adjournment was in palpable violation of this provision, inasmuch as it was for a period of three weeks. The second adjournment was for the same period. The third, fourth, fifth, and sixth were each for two weeks; the seventh for one week, the eighth for three weeks; the ninth, tenth, and eleventh were each for two weeks. No authority for such an excess of jurisdictional power has been cited, and I have been able to find none. There seems to be no alternative to holding the judgment in excess of jurisdiction, and therefore null and void upon this ground ; certainly as' against ■ these defendants, who never appeared, and who could therefore neither have requested or assented to such adjournments. Indeed, it is not easy to perceive how their request or assent, if made or given, could have operated to warrant what the statute expressly forbids.
I am therefore of opinion that the judgment in question is void on its face.
As the views I have adopted dispose of the case, I deem it unnecessary to consider the other objections to the validity of the judgment which were urged on “ the argument by the learned counsel for the defendants.
The plaintiff’s exceptions are accordingly overruled, and judgment is ordered for the defendants upon the verdict.
Speir, J., concurred.

 Affirmed in court of appeals, December 21, 1875.