By the Court.—Sanford, J.
—The defendants attempted to set up in their answer, by way of affirmative defense to the plaintiffs’ alleged cause of action, a former adjudication by the district court of the United States, of the respective claims of the plaintiffs and of James D. and William C. Lamb, to the freight money now in controversy. The allegations of' the answer as to such adjudication are insufficient to -constitute a defense; and the proofs adduced in support of them *74 show conclusively that no adjudication with respect to such freight money was made by that court.
It is manifest from the allegations of the answer that the decree of the district court therein referred to was interlocutory merely, and not final; and that it only purported to adjudicate upon the right of the libellants, Lamb & Co., to a lien upon the “Sarah Harris,” for the amount of their advances to and for the use of said vessel, without passing upon the right of the respondent Harris to have the freight money, subsequently earned by the vessel, credited upon such advances.. It is equally clear that neither the insertion in such decree of a clause referring it to a commissioner to ascertain and report the amount of such freight money, nor the report of such commissioner to the court, stating the amount thereof, constitutes a final and conclusive adjudication. To such an adjudication, the confirmation of the report and the rendition of a decree thereon are absolutely essential. The answer contains no averment that the report was ever confirmed, or that a final decree was ever rendered.
But an inspection of such interlocutory decree, as it appears in evidence, discloses the fact that all questions in regard to freight money were thereby expressly reserved until the coming in of such report; and it appears from the record of the final decree, actually rendered thereon, and from the opinion of the court which accompanied it, that inasmuch as the libel was filed only against the vessel, and not against freight money, and as the freight money had not been attached on process, the court could make no adjudication with respect to its in that suit; a&d that accordingly, none such was made. These observations effectually dispose of the question of a former adjudication, as a separate and distnct defense to the action.
But the case presents other issues, upon which as evidence, the judgment of the United States district *75 court has an important bearing. To maintain their action it was essential that the plaintiffs should aver, as in their complaint they did aver, that at the time of the shipment of the cargo, for the transportation whereof they now claim to recover freight, they were the owners of the Sarah Harris. This allegation the defendants, by their answer, deny; averring, on the contrary, that at the time of such shipment, the Sarah Harris was chartered by Terence Cochran, who was then master and part owner of the said vessel, to the firm of Lamb, Storer & Q-ad, to proceed on a voyage to the port of Hew York, with a cargo consigned to defendants; that the freight to be earned on said voyage, under said charter-party, was by the then master and part owner of said vessel, assigned and transferred to the firm of James D. and William C. Lamb, as security for advances made by them, to and for the use of said vessel, and that a provision was inserted in said charter by which said freight was made payable to the order of said Lamb & Co.; and that the freight on said cargo was, in accordance therewith, on the delivery of said cargo, or soon thereafter, and long before the commencement of this action or any claim'or notice of claim on the part of the plaintiffs, paid to the said Lamb & Co.
On the trial, the plaintiffs having adduced evidence tending to establish, prima facie, their ownership of the vessel, the defendants read in evidence depositions and documents, from which it appeared that the brig Sarah Harris, then owned by the plaintiffs, arrived at St. Thomas, in distress, on or about January 23, 1871, in command of James Jollymour, master, who on that day, made written application at the British consulate for a warrant of survey on said vessel, which was thereupon granted. Report having been made thereon recommending the discharge of cargo, for a further examination of the vessel, and the cargo having been *76 discharged pursuant thereto, a second application was made by the master for the appointment of surveyors. Further proceedings were thereupon had, which finally resulted in the sale of both vessel and cargo, on the ground that the vessel was not worth the cost of necessary repairs, and that the interest of all concerned required that such sale should be made. ‘ Terence Cochran and James F. Fulmore purchased the vessel at such sale.
On February 23, 1871, Terence Cochran made formal declaration of ownership, for the registry of said vessel under the British registry acts, declaring himself entitled to be registered as owner of forty-two shares, the other joint owner being James F. Fullmore, for the remaining twenty-two shares. On April 16, 1871, the vessel was chartered by Terence Cochran, as master and agent for owners, to Lamb, Storer and Gad, the charter containing provisions substantially as alleged in defendant’s answer, and particularly, to the effect that the freight should be paid to the order of Lamb & Co., as security for cash advances, and, in case of protest or non-payment, of Cochran’s draft on London, being the draft of £400, remitted by Lamb & Co. to the plaintiffs. The draft was duly protested, and Cochran had notice thereof, before leaving Humacoa. There was no dispute as to the fact or the regularity of such proceedings ; but their necessity, honesty, and good faith was hotly contested, and much testimony was offered, on both sides, bearing upon the question of their validity as fraudulent or otherwise.
The defendants have never disputed their liability as consignees of the cargo, for the freight payable thereon, but they insist, that by reason of the sale above set forth, and the provisions of the charter, under which such freight was earned, Lamb & Co., and not the plaintiffs, were entitled to receive payment *77 from them ; they also insist, that before the commencement of this action, and before any claim was made, on the part of the plaintiffs, or notice to them of the rights or claims of the plaintiffs, they did, in fact, pay it to Lamb & Co. There being no imputation upon them of any fraud or collusion, such payment, if made in good faith, without knowledge or notice of plaintiffs’ claims, would, doubtless, exonerate them from further liability, irrespective of the question whether the sale at St. Thomas, or the proceedings preliminary thereto, were or were not fraudulent and void. But the question as to whether such payment was made by them before receiving notice of plaintiffs’ claims r?as submitted to the jury upon conflicting evidence, and the jury found in favor of the plaintiffs. Without stating, in detail, the evidence upon this point, it is sufficient to say that it fully sustains the finding.
It must, therefore, for the purposes of this appeal, be assumed, ,as the jury found, that the defendants had not paid over to Lamb & Co., but had in hand, the freight money in question, when they received notice of the plaintiffs’ claims. Of course, any subsequent payment of it would be at their peril. It was then competent for them, at their option, to interplead the two adverse claimants, and thus, on paying the money into court, to secure their exoneration from further liability to either,—or, they could, if they saw fit, rely upon the title of either, as against the other. The latter alternative they seem to have adopted, and the question is thus presented, whether the title of the plaintiffs was divested by the condemnation and sale of the vessel, at St. Thomas; or, incidentally, whether the plaintiffs, as against Lamb & Co., whose title the defendants assert, are in any way estopped from disputing the validity of such sale. The defendants insist that such sale was regular and fair; that under it Cochran and.Fulmore acquired valid title to the *78 vessel, and became alone authorized to enter into contracts for its charter and affreightment; that by valid assignment from them, evidenced by the charter-party between Cochran and Lamb, Storer & Grad, Lamb & Co. became entitled to the freight money, now in controversy, as security for the payment of their advances, and in case of protest, of Cochran’s draft; and that, by receiving and retaining the proceeds of the vessel and cargo realized at such sale, as well as by accepting from underwriters the insurance money payable in case of the loss of the vessel, the plaintiffs have estopped themselves from asserting their title thereto, and from disputing the validity of such sale.
The exception taken by defendants to the refusal of the judge to -direct a verdict in their favor distinctly raises the question of such estoppel, and it is by way of evidence bearing upon that question, that the decree rendered in the district court of the United States, in the suit of Lamb & Co. against the “ Sarah Harris,” in which the plaintiffs intervened, becomes of prime importance. If the plaintiffs were estopped, either by receiving and retaining the proceeds of the vessel, or by accepting the insurance money, from subsequently asserting title to her, as against Lamb & Co., the judge erred in submitting to the jury the question of the honesty and validity of the proceedings under which such sale was effected, and in not directing a verdict for the defendants in compliance with their request; and if the question, of such estoppel has been distinctly and decisively adjudicated by the district court of the United States in the suit above referred to, its decree is conclusive, and it is not within the province of this court to review its decision, or to entertain the same question, de now (Birckhead v. Brown, 5 Sandf. 134). After a careful perusal and examination of the record of the proceedings in that suit, as they appear in evidence, I have arrived at the conclusion that the decree does involve an *79 adjudication of these very questions of estoppel. It is ■ true that the subject-matter of that suit is not the same as in this ; that the libellants there were proceeding against the vessel for advances and .supplies, not against the freight earned by her; and that the freight so earned, not having been attached by any process issued in that suit, was not within the jurisdiction of the court. Indeed, it was expressly held in that suit, as has already been stated, that no adjudication with respect to such freight moneys could be made therein. It is also true, that the question of the validity or invalidity of the sale under the proceedings had at St. Thomas was not considered or determined. But the judge before whom the trial of that suit was had, did decide that the claimant, John Harris, representing the plaintiffs here, was estopped, as against the libellants, Lamb & Co., from setting up the invalidity of such sale, because he ratified and affirmed it by his acceptance of the insurance money and by his acceptance and retention of the entire net proceeds of the sale of the vessel, when such proceeds were sent to him by the libellants. He accordingly held that the vessel must be regarded, for the purposes of that suit, as lawfully in the possession of those who actually controlled her, at St. Thomas, when the libellants furnished money there for supplies and repairs to her. Such lawful possession was an essential element in the adjudication thereupon rendered in favor of the libellants, establishing a lien in their favor, on the vessel, for the moneys they advanced or disbursed to her master, Terence Cochran, at St. Thomas, for repairing, supplying, and refitting her. Such an adjudication could not have been rendered, under the maritime law, unless either the sale had been declared valid and effectual, or such estoppel had been successfully invoked and sustained. A material question, therefore, upon which the right of the plaintiffs to recover in this action the freight earned by *80 the Sarah Harris depends, was determined against them in that suit. Had it been determined by the decree there rendered that the sale and all the proceedings preliminary thereto, were fair, honest and untainted by any suspicion of fraud, and that the sale was accordingly valid and effectual, no one would be heard to contend, that as between the plaintiffs and Lamb & Co., such an adjudication would not bar a recovery of freight money assigned or made payable to them by the purchasers at the sale, or by the duly constituted agent of such purchasers. It is difficult to perceive any difference, in principle or effect, between such an adjudication, and one which declares the plaintiffs estopped by their own acts or admissions from disputing the validity of such sale. The case of Birckhead ■». Brown, above cited, is authority for the proposition that “ as between the parties and their privies, a judgment is conclusive as to every question, upon which the right of the plaintiff to recover, or the validity of a defense, in another suit, is found to depend, and upon the determination of which it appears from the record, or is shown by extrinsic proof, that the judgment was, in reality, founded. So long as such judgment remains in force, the parties to it and their privies are estopped from denying either the facts or the law upon which it proceeds.
Without expressing any opinion, therefore, as to whether the receipt by plaintiffs from Lamb & Co., of the proceeds of vessel and cargo, or their receipt from underwriters of the amount of the policy of insurance upon the vessel, did or did not constitute an estoppel, a question as to which the district court of the United States and the court below are at variance, I am of opinion that the court below should have accepted as res adjudioata, and therefore conclusive, the decision of the district court upon that question, and should not have submitted to the jury the question *81 of the honesty or dishonesty of the sale, and proceedings preliminary thereto. Of course, if that question was conclusively determined in favor of defendants by a former adjudication, this action could not be maintained. There was, therefore, in such case, no occasion for submitting to the jury the question as to whether ■payment was made by defendants to Lamb & Co. before notice of plaintiffs* claims. The defendants were entitled to a peremptory instruction to the jury, to find a verdict in their favor, and for error in refusing such instruction, the judgment must be reversed, and a new trial ordered, with costs to abide the event.
Curtis, Oh. J., and Freedman, J., concurred.*

 The plaintiffs appealed to the court of appeals, from the order entered on this decision, giving the requisite stipulation. Thereafter, upon plaintiffs’ motion, the general term inserted in its order a statement that the judgment Was reversed and a new trial ordered on questions of law solely. Thereafter, on motion of plaintiffs, this order was made the Order of the court of appeals. Thereafter defendants moved to dismiss the appeal of the plaintiffs to that court. That court denied the motion.
The opinion Of the court of appeals seemed to the reporters to be so important to the profession as to render it advisable that it should he reported as early as practicable ;■ they therefore obtained the kind permission of Mr. Sickles, the court of appeals reporter, to report it.
The Opinion is as follows:
Rapalí.0, J.—Oh the trial, this case was submitted to the júry on t-he question of fact, whether certain proceedings at St. Thomas, by Which thé vessel Of the plaintiff Was condemned and sold, were honest and fair, or were fraudulent. The jury found for the plaintiffs, and the effect of the verdict was to establish the fraud charged. The facts Were controverted.
The defendants moved upon the minutes for a new trial on the ground £>f the insufficiency of the evidence. The motion was denied and judgment entered on the verdict, and an appeal was taken to the general term from the order denying a new trial, and also from the judgment.
On these appeals the general term reversed the judgment and ordered a new trial. From the opinion it appears that the reversal *82 was upon the sole ground that a certain decree in admiralty in New York was conclusive upon the plaintiffs as to the validity of the sale at St. Thomas, and a bar to this action.
The question whether the evidence was sufficient to sustain the finding of the jury that the sale at St. Thomas was fraudulent, was not considered in the opinion, and the court below has inserted in its order of reversal a statement that the reversal was on questions of law only.
The plaintiffs have appealed to this court, and the defendants now move to dismiss the appeal.
We have repeatedly held that an appeal to this court will not be entertained where the court below has ordered a new trial in a case tried by jury, if any material and controverted question of fact was involved, and the general term granted, or might have granted, the new trial on such question of fact. But as considerable misapprehension seems still to exist as to the application of this rule, we will further explain it and the reasons upon which it is founded.
It appears to be supposed by many that the appealability of the order depends upon the question, whether the new trial was actually granted upon questions of fact or of law, and that the declaration of the court below that its decision was based upon questions of law only, is sufficient to render the case appealable. But this is an error. In the first place, we have often held that we will not regard the opinion as conclusive, inasmuch as the result may have been concurred in by some of the judges on their view of the facts, and there is no authority of law for inserting the ground of reversal in the order, as in the case of trials before the court or a referee; that it is incumbent upon the appellant to show error in the decision appealed from, and that an order granting a .hew trial is not shown to be erroneous, by showing that there was no valid exception in the case, provided it was in such a condition that the general term could have reversed upon the facts.
But aside from these technical grounds there are still more substantial reasons for the rule. Assuming that the court did actually grant the new trial on a question of law, and that this can be made conclusively to appear; yet, if the case came before the general term in such form, and the character of the evidence was such that a new trial might have been granted on questions of fact, the order is not appeal-able to this court, and should not be. To hold otherwise might result in entirely depriving the party against whom the judgment was rendered of the review at general term upon the facts to which the law entitles him.
. . The present case affords a good illustration. Suppose this court *83 should differ with the general term upon the question of law on which its order for a new trial was founded, what judgment should we render ? If we should reverse the order, the consequence would be an affirmance of the judgment entered on the verdict, and in that event the defendants would have a final judgment against them on the ground that the sale at St. Thomas was fraudulent in fact, without having had any review of the verdict, by the general term, upon the evidence, notwithstanding that the law gave them the right to such review, and that they had taken all the steps required to obtain it.
If the general term had not been of the opinion that the decree in admiralty was a legal bar to the action, it would beyond doubt have proceeded to perform its duty of examining the question of fact, and might have reversed the judgment and granted a new trial on the ground that the verdict was against the weight of evidence. By the appeal from the order denying the motion for a new trial on the minutes, the questions of fact were brought legitimately before the general term, and it must be presumed that it would have passed upon them had it not been of opinion that the point of law required a review of the judgment. If under such circumstances this court should finally dispose of cases on appeal from orders granting new trials, it is evident that a mistake by a general term in respect to a question of law, would result in entirely depriving the party against whom the judgment was rendered of any review of the verdict upon the evidence. On these grounds we have repeatedly declined to entertain such appeals.
It may be suggested, that this court could hear the appeal, and if it overruled the point of law upon which the new trial was granted, the case might be sent back to be reheard at general term upon the facts, but there is no precedent for such a practice, it is liable to grave objections, and would be an innovation which we are not inclined to introduce.
Where exceptions have been taken, and a motion for a new trial has also been made upon the minutes or at special term, the unsuccessful party may waive any further review upon the facts, and appeal to the general term from the judgment. This appeal will bring up the exceptions only, or where an appeal is taken from the order refusing a new trial, as well as from the judgment, the general term may reverse the judgment upon the exceptions, and at the same time affirm the order refusing a new trial upon the facts.
In either of the cases supposed the order of the general term is appealable. But in no other case will such an appeal lie, in a case tried by a jury, if controverted and material questions of fact are involved, and a motion for a new trial has been made on the evidence.
*84 The inconvenience and expense of going back for a new. trial, when the Case may ultimately turn upon the question of law, is invariably urged upon the court in cases of this description; but it must not be overlooked, that the inconvenience complained of is not nearly so great a hardship, as" would be inflicted by rendering a final judgment against a party upon a verdict which may have been rendered contrary to the Weight of the evidence, and which would have been set aside by the court at general term had it not rested its order granting a new trial upon an erroneous view of the law. It must also be remembered that orders granting new trials are not final orders, and were in no case appealable to this court until the amendment of the Code, adopted in 1857. The purpose of this amendment -was to obviate the inconvenience now alluded to; but the right of appeal was confined, as we have often decided, to cases depending upon questions of law, except where the trial was before a court or referee. We cannot extend it to cases tried before a jury where questions of fact as well as law are involved.
In the present case the appellants contend that, although on the trial the case was submitted to the jury, and determined, on a controverted question of fact, yet such question of fact was immaterial; that even if the general term had been of opinion that the verdict on that question was against the weight of the evidence the plaintiffs were nevertheless entitled to judgment upon the uncontroverted facts, unless the decision of the general term upon the question of law can be sustained.
If they can make this out to the satisfaction of the court the order is doubtless appealable, for then no material question of fact is involved in the case, and a hew trial would be of no avail. Its determination would depend wholly upon the question Of law.
Wo have looked into the record to ascertain whether there is any color for this proposition. The appellants’ counsel claims that the point should not be determined on a motion, but only on a full hearing, and in this we are inclined to concur with him and not now to decide the point against him unless it is plainly frivolous. Upon an inspection of the return we find that the case is quite voluminous and somewhat complicated, and that it would require an examination on the merits to decide the point. We have therefore concluded to hear the case, if the appellants desire to argue it in view of the intimation we have given.
If they elect to proceed with the appeal, it will be incumbent upon them to establish that the case is such that they can abandon the finding of the jury, and that they were legally entitled to have a verdict directed in them favor. But if the question of fact upon which *85 the jury passed turns out to have been material, the. appeal will still have to be dismissed, and the appellants incur the further hazard, that if any material exception taken at the trial turns out to have been well founded, whether passed upon in the opinion at general term or not, the order may be affirmed and judgment absolute rendered against the plaintiffs in pursuance of their stipulation.
Unless the appellants consent to a dismissal of the appeal l^e motion is denied, but without costs.
All concur.